## ST. JOHNS RIVER WATER MANAGEMENT DISTRICT v. CORPORATION OF THE PRESIDENT OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS

Case No. 82-1504

Ninth Judicial Circuit, Osceola County

April 30, 1984

### APPEARANCES OF COUNSEL

**Christopher C. Skambis** and **Vance W. Kidder** for plaintiff.

**Kenneth G. Oertel** and **Segundo J. Fernandez**, of **Oertel & Hoffman**, for defendant.

### OPINION OF THE COURT

CECIL H. BROWN, Circuit Judge.

This cause came before the Court at the Pre-trial Conference in the above captioned matter on Friday, March 23, 1984 at 1:30 p.m. on

plaintiff St. Johns River Water Management District's (hereinafter "the District") Motion for Summary Final Judgment served March 2, 1984, and the Court having reviewed the Complaint, Answer, Affirmative Defenses, depositions and other discovery and papers on file, having heard argument of counsel and being otherwise fully advised in the premises, the Court finds that no genuine issue of material fact exists with respect to the facts set forth below and that the District is entitled to final judgment on the allegations of its complaint as a matter of law based on the authority cited below:

## FINDINGS AND CONCLUSIONS

1. This Court has personal jurisdiction over the District and over defendant Corporation of the President of the Church of Jesus Christ of Latter-Day Saints (hereinafter "Deseret") and has jurisdiction of the subject matter presented in this action.

2. The District is a governmental entity established by Chapter 373, Florida Statutes. The District has implemented a permitting program pursuant to Section 373.403, *et seq.*, having adopted rules applicable to that permitting program appearing in Chapter 40C-4, Florida Administrative Code. The permitting program established pursuant to those statutes and rules is commonly referred to as "management and storage of surface waters" permitting.

3. The District has also implemented a permitting program pursuant to Section 373.085, Florida Statutes. Rules applicable to that permitting program appear in Chapter 40C-6, Florida Administrative Code. This permitting program is commonly referred to as "works of the District" permitting.

4. The District's boundaries are described by a legal description appearing in Section 373.069(2)(c), Florida Statutes. The property owned by Deseret on which the activity alleged in the District's complaint is occurring, is located within the geographic boundaries of the District. The statutory permitting authority of the District applies to the property of Deseret described below.

5. In October 1982, Deseret, pursuant to the instructions of its General Manager, Robert Lamoreaux, commenced excavating earthen material from a pre-existing drainage ditch on its property. The excavation occurred in Section 34, Township 29 South, Range 35 East and Section 3, Township 30 South, Range 35 East, Brevard County, Florida. The drainage ditch continues from the point of excavation in a north-northwesterly to south-southeasterly direction through Section 10 of Township 30 South, Range 35 East. The ditch has been circled in

56

the attached Exhibit A to this order and shall hereinafter be referred to as the "pre-existing drainage ditch" or "the drainage ditch". The acreage of land drained by the ditch exceeds forty (40) acres.

6. The pre-existing drainage ditch is adjacent and immediately to the west edge of a 15-foot-wide berm which is adjacent and immediately to the west of a spoil bank or dike created from material excavated at an earlier time from the drainage ditch.

7. During the excavation occurring in October 1982, Deseret excavated beyond the original confines of the pre-existing drainage ditch by removing the 15-foot-wide berm between the drainage ditch and the dike so as to increase the width of the drainage ditch. The excavation required a permit from the District pursuant to Sections 373.403, *et seq.*, and Section 373.085, Florida Statutes, unless otherwise exempted by statute or rule. Deseret did not obtain a permit from the District prior to commencing its excavation of the berm.

8. Having shown a statutory violation, the District is entitled to injunctive relief unless Deseret is capable of proving one or more of its affirmative defenses. Sections 373.136 and 373.129, Florida Statutes; *Harvey v. Wittenberg*, 384 So.2d 940 (Fla. 3d DCA 1980).

9. Deseret has raised three affirmative defenses in avoidance of the District's claim for relief. The first affirmative defense is based on Section 403.813(2)(f) and (g), Florida Statutes. In general, those provisions exempt from the permitting requirements of Chapter 373, Florida Statutes, maintenance activities on certain types of existing structures so as to return them to their *original* design specifications.

Mr. Lamoreaux admitted in his deposition that the excavation being conducted on the pre-existing drainage ditch exceeded the original design width of that ditch. As a result, the exemptions in Sections 403.813(f) and (g), Florida Statutes, do not apply. Similarly, Deseret's third affirmative defense based on Rule 40C-4.051(5) and 40C-6.051(2)(d), Florida Administrative Code, is inapplicable. Specifically, Rule 40C-6.051(2)(d) exempts "[r]epair of all existing works in the same configuration, and locations" from the permitting authority of the District. Mr. Lamoreaux's admission that Deseret was exceeding the original specifications for the drainage ditch necessarily means that the drainage ditch was not being repaired to the "same configuration".

10. Deseret's second, and only other, affirmative defense relies on an exemption contained in Section 373.403(6) and 373.406(3), Florida Statutes. Section 373.406(3) specifically exempts "construction, operation, or maintenance of any agricultural closed system" from the permitting authority of the District under Part IV of Chapter 373,

Florida Statutes. The term "closed system" is defined in Section 373.403(6) as:

. . . any reservoir or works located entirely within agricultural lands owned or controlled by the user and which requires water only for the filling, replenishing, and maintaining the water level thereof.

11. Case law that exists on the interpretation of this definition and exemption is not pertinent to the matters argued on summary judgment. As a result, traditional principles of statutory construction must be invoked to determine its meaning. Deseret has not contended that the pre-existing drainage ditch or any of its associated ditches constitute a reservoir as defined in Section 373.403(4), Florida Statutes. The Court notes that the definition of "works" is an artificial structure that "connects to, draws water from, drains water into or is placed in or across the waters in the state". The definition of "closed system" eliminates the hydrologic connection between the artificial structure and the waters in the state by requiring the system to be entirely within agricultural lands owned or controlled by the user. In addition, the type of structure involved in a closed system must "require" water. Further, the water must be required "only for the filling, replenishing, *and* maintaining" the water level in that structure.

12. The evidence before the Court as it appears in the deposition of William Kerr is that the entire system on Deseret's property was constructed for the purpose of drainage. Pumps were installed on the north end of the pre-existing drainage ditch for the purpose of pumping water from Deseret's property enclosed by a perimeter dike into a ditch outside the dike and by normal hydrologic action that water in the canal would then go into the St. Johns River marsh.

Mr. Kerr indicated that, even to this day, the pipes used by the pumps to withdraw water from the property still exist and act as culverts effecting gravity drainage from the pre-existing drainage ditch through the perimeter dike to the outside ditch and marsh. Finally, the principal use of the drainage ditch is for drainage of the surrounding property. The intent is to remove water from the property so that the property, which would in its natural state be marsh, can be used for more intensive agricultural purposes. Thus, the ditches and dikes involved in this case belie any claim that those structures serve as bodies of water which will be filled, replenished and maintained with water.

13. In addition, the contemporaneous interpretations of statutes by those charged with administering, enforcing and interpreting them are entitled to great weight. *Gay v. Canada Dry Bottling Co. of Florida,*

58

*Inc.*, 59 So.2d 788 (Fla. 1952); *Department of Revenue v. Skop*, 383 So.2d 678 (Fla 5th DCA 1980); *Austin v. Austin*, 350 So.2d 102 (Fla 1st DCA 1977). Rule 40C-4.051(3), Florida Administrative Code, contains the District's rule with respect to the closed system exemption. The rule provides:

> Nothing in this Chapter, or in any rule, regulation or order adopted pursuant thereto, shall be construed to be applicable to construction, operation, or maintenance of any closed system provided that said closed system does not *at any time* connect to, drain water from, or drain water into waters in the district outside the closed system. (Emphasis supplied)

The only evidence before this Court at the Summary Judgment hearing was that at all relevant times in the past up to and including the present, Deseret's drainage system connected to and drained water into waters in the district outside the purported closed system. Based on the foregoing, Deseret's affirmative defense that its drainage system is a closed system and exempt from permitting requirements of Chapter 373, Florida Statutes, must fail.

On the basis of the foregoing findings and conclusions, it is ORDERED AND ADJUDGED as follows:

1. Defendant Corporation of the President of the Church of Jesus Christ of Latter-Day Saints, its officers, agents, representatives, employees and any other persons including independent contractors acting in concert with them, be and hereby are permanently enjoined and restrained from conducting excavation activity on that certain pre-existing drainage ditch located on its property in Section 34, Township 29 South, Range 35 East and Sections 3 and 10, Township 30 South, Range 35 East, Brevard County, Florida, and circled on Exhibit A attached hereto; provided, however, that said corporation shall be entitled to excavate material from the drainage ditch if it first obtains a permit for that excavation from the St. Johns River Water Management District and any other applicable governmental body having jurisdiction thereof. Further, said corporation shall be entitled to excavate material from the pre-existing drainage ditch upon a showing satisfactory to the St. Johns River Water Management District and any other applicable governmental body having jurisdiction thereof, that the excavation is exempt from permitting requirements pursuant to Section 403.813(2)(f) and (g), Florida Statutes.

2. In the event that said corporation is unable to satisfy the appropriate governmental authorities that its proposed excavation is exempt from permitting requirements, then said corporation may apply to this Court for a determination that its proposed excavation is exempt.

**59**

3. Said corporation is directed to apply for a permit for the excavation on the pre-existing drainage ditch which excavation has already occurred in violation of Chapter 373, Florida Statutes, within 30 days from the date of this order. In the alternative, said corporation shall commence restoration of the excavated area so as not to exceed the original design specifications of the drainage ditch.

4. In the event that the St. Johns River Water Management District denies said corporation's permit application for the excavation on the pre-existing drainage ditch and the denial of that application becomes final and unappealable, then said corporation shall proceed to restore the previously excavated area adjacent to the main drainage ditch so as not to exceed its original design specifications.

5. The Court reserves jurisdiction for the purpose of taxation of costs, for the purpose of ordering such further relief as it may deem appropriate and for the purpose of monitoring compliance of the parties with this order.

6. This order is intended to constitute a final adjudication of plaintiff's claim and is intended by this Court to be appealable as a final order. The Court retains jurisdiction of the counterclaim, which the Court finds to be separate from and independent of the issues on which summary final judgment has been entered above.