432 So.2d 166 (1983)
Yahya BEHESHTITABAR, Appellant,
v.
FLORIDA STATE UNIVERSITY, Appellee.
No. AM-258.
District Court of Appeal of Florida, First District.
May 17, 1983.
Kenneth G. Oertel of Oertel & Laramore, P.A., Tallahassee, for appellant.
Charles S. Ruberg, Associate University Atty., Tallahassee, for appellee.
MILLS, Judge.
Beheshtitabar appeals Florida State University's refusal to readmit him to a doctoral program in economics, contending that he is entitled to a hearing pursuant to Section 120.57(1), Florida Statutes (1981), because the University's decision is one in which "the substantial interests of a party are determined by an agency." We disagree and affirm the University's refusal to transfer the case to the Department of Administrative Hearings (DOAH).
In the fall of 1977, Beheshtitabar entered the doctoral program of the Department of Economics of the College of Social Sciences at Florida State University. One of the conditions for remaining in the program was that the candidate maintain a grade point average of at least 3.0. At the conclusion of the 1980 fall quarter, Beheshtitabar was dismissed from the program after his cumulative grade point average dropped below 3.0 for four consecutive quarters.
In June 1981, Beheshtitabar was allowed by the Dean of the College of Social Sciences to withdraw retroactively from a course in which Beheshtitabar was enrolled during winter quarter 1979. The effect of this action was to raise Beheshtitabar's grade point average to 3.034. There is uncontroverted evidence that Beheshtitabar had been allowed to retroactively withdraw from the course in return for his promise not to seek readmission into the program. Later, Beheshtitabar was allowed to change another of his grades from a "D" to a "W". (The symbol "W" signifies that a student has withdrawn from the university before completing the course.) The effect of these two actions was to raise Beheshtitabar's cumulative grade point average to 3.080.
In September 1981, Beheshtitabar sought readmission to the doctoral program notwithstanding his agreement to the contrary. The University denied his request on 8 September 1981.
Sometime later, Beheshtitabar sought and obtained a hearing before the Student Academic Relations Committee (SARC). That organization is charged by the Faculty Senate to hear appeals from students who feel that "decisions about their academic work have been made improperly and unprofessionally." Beheshtitabar was represented by counsel at this hearing. After reviewing Beheshtitabar's oral and written presentations, SARC voted five to one, with *167 one abstention, to recommend that he not be readmitted.
On 5 March 1982, Beheshtitabar wrote a letter to the President of Florida State University, Dr. Bernard Sliger. In that letter, he requested a hearing before the DOAH pursuant to Section 120.57(1), Florida Statutes. That request was denied by final order dated 10 May 1982.
It seems clear from this evidence that the University's decision was grounded solely on academic considerations.
In Board of Curators of the University of Missouri v. Horowitz, 435 U.S. 78, 98 S.Ct. 948, 55 L.Ed.2d 124 (1978), the United States Supreme Court was faced with a situation similar to the one presented here. Horowitz had been dismissed as a medical student for academic reasons. The Court held she was not entitled to a prior hearing under the due process clause. Although not directly on point because it involved a constitutional rather than a statutory right, the decision does contain some helpful analysis:
Academic evaluations of a student, in contrast to disciplinary determinations, bear little resemblance to the judicial and administrative factfinding proceedings to which we have traditionally attached a full-hearing requirement. * * * Such a judgment is by its nature more subjective and evaluative than the typical factual questions presented in the average disciplinary decision. Like the decision of an individual professor as to the proper grade for a student in his course, the determination whether to dismiss a student for academic reasons requires an expert evaluation of cumulative information and is not readily adapted to the procedural tools of judicial or administrative decision-making.
Under such circumstances, we decline to ignore the historic judgment of educators and thereby formalize the academic dismissal process by requiring a hearing. The educational process is not by nature adversary; instead it centers around a continuing relationship between faculty and students, "one in which the teacher must occupy many roles  educator, adviser, friend, and, at times, parent-substitute." Goss v. Lopez, 419 U.S. 565, at 594, 42 L.Ed.2d 725, 95 S.Ct. 729 [at 746] (Powell, J., dissenting). This is especially true as one advances through the varying regimes of the educational system, and the instruction becomes both more individualized and more specialized.
435 U.S. 89-90, 98 S.Ct. 955.
Florida and other states have also recognized a distinction between disciplinary determinations and academic evaluations. Militana v. University of Miami, 236 So.2d 162 (Fla. 3d DCA 1970); Mustell v. Rose, 282 Ala. 358, 211 So.2d 489 (Ala. 1968).
Granting Beheshtitabar a hearing on this matter would open this Court and the Department of Administrative Hearings to a flood of claims which could be filed anytime a university or college student was dissatisfied with his grade in a particular course.
The University's decision to deny Beheshtitabar readmission is not a decision in which "the substantial interests of a party are determined by an agency" within the meaning of Section 120.57, Florida Statutes (1981).
AFFIRMED.
PEARSON, TILLMAN (Ret.), Associate Judge, concurs.
ERVIN, J., concurs specially with an opinion.
ERVIN, Judge, specially concurring.
Although I agree with the majority's conclusion that Beheshtitabar is not entitled to a hearing pursuant to section 120.57(1), Florida Statutes, I disagree with the reasons given by the majority that the University's determination to deny the student readmission is not necessarily one affecting his substantial interests within the meaning of section 120.57, Florida Statutes. The majority supports its decision by relying upon an opinion of the United States Supreme Court in Board of Curators, University of Missouri v. Horowitz, 435 U.S. 78, 98 S.Ct. 948, 55 L.Ed.2d 124 (1978), holding *168 that subjective academic evaluations are not, under the due process clause, subject to adversarial hearings. If there were no disputed factual issue in the case on review that the cumulative grade average Beheshtitabar received was the result only of the faculty's subjective evaluation, then I could agree that the student's substantial interests were not affected, because the academic determination was "not readily adapted to the procedural tools of judicial or administrative decisionmaking." 435 U.S. at 90, 98 S.Ct. at 955, 55 L.Ed.2d at 135.
Beheshtitabar does not, however, assail his grades as simply an error in the academic evaluation, but asserts rather that they were the product of non-academic, and hence, irrelevant considerations. Among other things, he charges that the decision was motivated by arbitrariness, capriciousness and bad faith. For example, he states that at the time of his denial for readmission, he was an Iranian citizen and the decision of the University was in part a punitive reaction to the seizure of the American Embassy in Iran and the taking of American hostages. The University, on the other hand, has denied any such consideration played a role in its decision not to readmit him to the doctoral program in economics, stating that his dismissal was the result only of his poor academic performance.
Surely, the differing positions of the parties raise an issue of disputed fact which affects the student's substantial interests, so as to accord him the right to a section 120.57(1) hearing. Indeed, in Sterman v. Florida State University Board of Regents, 414 So.2d 1102, 1104 (Fla. 1st DCA 1982), we held that a hearing was required on allegations in a student's petition, which were "in no way concerned with the initial subjective judgment of his academic performance [but related] instead to the alleged impropriety of the revocation" of certain options given to him as a candidate for a doctoral degree in science education, as a substitute for completing the program.
Nevertheless, I agree with the University's alternative ground for denial on the basis that he has waived his right to such a hearing. The rule is well established that even one whose substantial interests are affected by agency action may waive his right to a section 120.57 hearing. See United Telephone Co. of Florida v. Mann, 403 So.2d 962, 967 n. 5 (Fla. 1981); Mitchell v. School Board of Leon County, 347 So.2d 805 (Fla. 1st DCA 1977); Dickerson, Inc. v. Rose, 398 So.2d 922, 924 (Fla. 1st DCA 1981). The record shows that Beheshtitabar entered the University during the fall quarter of 1977, when he enrolled in a doctoral program offered by the Department of Economics of the College of Social Sciences. Later, at the end of the fall quarter of 1980, he was dismissed from the University, ostensibly for failing to maintain a 3.0 grade average, after having been placed on academic probation the preceding quarter. Following his dismissal, in June, 1981, he made an arrangement with the Dean of the College of Social Sciences, agreeing that he would withdraw from the Department of Economics and not seek readmission, provided that the Dean would allow him to withdraw retroactively from a course which he had taken during the winter quarter of 1979, for which he had received a grade of "C". Notwithstanding the agreement, the grade was changed, but Beheshtitabar later sought readmission to the Department of Economics. This request was denied for the stated reason that he had failed to receive approval of the department.
It does not appear from the allegations in either Beheshtitabar's petition for a hearing, or in the petition for writ of mandamus that there is any factual dispute as to the terms of the agreement. I therefore concur in the affirmance on the very limited ground that he has waived his right to a section 120.57 hearing because of his agreement not to reenter the Department of Economics.