PER CURIAM.
After the state agency Ms. Springfield worked for transferred her to Tallahassee, she decided she would rather give up her job than move to north Florida. Hearing Officer Cheatham found the facts:
1. Chelia Springfield was hired as a park ranger by the agency in February 1986 and assigned to Lake Kissimmee State Park in Polk County. She transferred in 1988 to Southwest Florida to Koreshan State Historic Site and was promoted to assistant park manager in January 1989. There she received a public service award. She transferred in November 1989 for a promotion to the position of park ranger of Fakahatchee Strand State Preserve, also located in Southwest Florida.
2. In July 1991, Springfield was investigated for several disciplinary offenses and relieved of her duties as park manager. She was temporarily reassigned to work in the district office, and later, at her request, as a park ranger at Koreshan State Historic Site.
3. The Agency formally demoted Springfield to park ranger and suspended her for three days by letter dated September 16, 1991. In that letter, the Agency also notified Springfield that she would be transferred at a later date. Her last day at work in any capacity was on September 25, 1991. The next day she had surgery on her right ankle and went on sick leave. On October 10, she had surgery on her left ankle. Her medical condition was covered by state employee health insurance, but this did not reimburse Springfield for all her medical bills.
4. On October 2,1991, the Agency notified Springfield of her new assignment as a park ranger in Tallahassee at Maclay Gardens, effective November 4,1991. Springfield did not report in November. She was on either sick or annual leave until the last week in January 1992. Nevertheless, Springfield was able to take a new job as a landscaper for a private housing development on December 2, 1991.
5. On December 3, 1991, Springfield requested leave without pay status to commence on January 28, 1992. The only reason she listed was “personal.” Her new supervisor responded that her job at Maclay Gardens was “indispensable” and the “peak visitation” period was approaching. He then asked for more information. Subsequently, her request was denied and she was directed to report for work at Maclay Gardens on January 29, 1992.
6. On January 29, 1992, Springfield was notified that if she failed to appear for work she would be dismissed for abandonment of her job. Springfield responded that she was financially unable to move to Tallahassee and would not report to work at Maclay Gardens. Springfield did not *804 report for work and on February 4, 1992, the Agency dismissed her for abandonment of her job.
After procedural twists which turned out to have no significance for the final outcome, the Public Employees Relations Commission entered the final order now under review.
The final order did not view Ms. Springfield’s separation from employment as a termination either for insubordination or by virtue of any rule-made presumption.
In this case, considering that Springfield was able to work, did not have approved leave of any kind, was able to move to Tallahassee, and intentionally failed to report to work for three consecutive workdays despite being previously warned that her failure to report to work would be considered job abandonment, it was reasonable for the hearing officer to find that Springfield intended to abandon her position. Therefore, Springfield’s second and third exceptions are denied.
Springfield’s first exception appeared to challenge the Agency’s authority to involuntarily separate her from employment under the guise of abandonment. This argument is without merit, because the hearing officer found, and we agree, that Springfield’s separation was voluntary. Thus, Springfield’s first exception is denied.
The final order simply found that Ms. Springfield had in fact decided to give up her state job. We find nothing in this determination that requires reversal.
Even if the final order could be construed as relying improperly on an administrative rule, a question we do not reach, “the law is so well settled as to require no citation of authority to the effect that a correct result or judgment, though based on an erroneous reason or rule, requires affirmance on appeal. In other words, it is the final conclusion or judgment which counts and not the reasons therefor.” Jones v. Dove, 300 So.2d 758, 758-59 (Fla. 1st DCA 1974) (on rehearing); accord, e.g., Stuart v. State, 360 So.2d 406 (Fla.1978); Robinson v. State, 393 So.2d 33 (Fla. 1st DCA 1981).
AFFIRMED.
BOOTH and BENTON, JJ., concur.
ALLEN, J., dissents with opinion.